[PHILADELPHIA, FEBRUARY 11TH, 1839.]

## M'CAUSLAND *against* LEUFFER.

### APPEAL.

Where a contract was made by A., the owner of a lot in the District of Spring Garden, in the county of Philadelphia, with B., for work and materials to be done and furnished by the latter in setting curb-stone in front of the lot, and B. took the promissory note of A. for the amount, and afterwards filed a claim against A., and brought suit upon the note in his own name, it was *held*, that the commissioners of Spring Garden had no lien for the amount under the act of assembly of 3d March, 1818, although they had given a general order to B., who was in their employment, to execute all such work in the district, but under an agreement that he should collect the money from the owners of the real estate, whenever he could, and that the corporation should only be eventually liable.

THIS was an appeal taken by the commissioners of the District of Spring Garden, in the county of Philadelphia, from a decree of the District Court for the City and County of Philadelphia, in the matter of the distribution of the proceeds of a sheriff's sale of certain real estate, sold by virtue of a writ of *levari facias* in an action brought in that Court by Alexander M'Causland against Thomas George Leuffer.

The premises, which consisted of a three-story brick messuage and lot of ground, situate on the south side of Francis's or Coats's street, in the county of Philadelphia, containing in breadth on the west side thereof two hundred and twenty-five feet, and on the east side thereof two hundred and ninety-one feet, and on St. Andrew's street, four hundred and ninety-five feet, were sold on the 23d of September, 1835, for $4000, and after a partial distribution of the fund by the sheriff, the balance was paid into Court, and an auditor was appointed to report distribution.

On the 15th of September, 1836, the auditor reported, that the only question presented to him arose from a single item in the claim of the commissioners of Spring Garden, which was as follows :

(M'Causland *v.* Leuffer.)

" Thos. G. Leuffer,

To Com. Spring Garden, Dr.

| | | |
|---|---|---|
| 1835. Aug. 3. To paving Coats's st. 1308 yds | $1439 | 68 |
| " curb-stone 490 feet 93-8 in. | 274 | 84 |
| | $1714 | 52 |

Interest on do., and commissions 3 per cent."

The claim was made under the act of assembly of 3d March, 1818, which provides that all real estate within the district, shall be subject to the payment of the debts to be contracted by the commissioners for work done and materials furnished for pitching, curbing and paving in front of such real estate, before any other lien, &c.

The act of February 15th, 1834, directing the assessments, &c., to be *prima facie* evidence, was referred to.

The item objected to in the above bill, was that for curbing, $274 84, and the auditor decided in favour of the District of Spring Garden, awarding to them the sum of $285 80 for this bill, with interest and commissions, which is included in the sum of $1780 23 awarded to the said district in the report.

To this report of the auditor the counsel for Robert Coburn, a judgment creditor, filed exceptions, which were argued in the District Court.

The following is a brief statement of the evidence, as presented to the Court on the hearing of the exceptions.

On the 18th of September, 1834, Michael M'Closkey contracted with Thomas G. Leuffer to sell to him, and to set for him, the curbstone in front of his premises on Coats's street, between Schuylkill Second and Third streets, in the District of Spring Garden, at fifty cents the running foot. This contract was evidenced by the entry made by Mr. M'Closkey in his book of original entries, as follows:

" Yankee curb-stone.

1834.

Sept. 18.   Thos. G. Leuffer, premises Coats's st.
510.00 feet                                    $255 00"

No charge of any kind was made against the commissioners of Spring Garden. After the completion of his contract, M'Closkey took in payment thereof the note of Leuffer, with interest added, viz. three dollars eighty-two cents, in these words:

"$258 82                                    Philada. 26 Nov. 1834.

Ninety days after date I promise to pay Mr. Michael M'Closkey, or order, without defalcation, two hundred and fifty-eight 82-100 dolls. for value received.

THOS. GEO. LEUFFER."

On the 9th of March, 1835, Mr. M'Closkey, on the ground that there was a three-story brick building on the premises, filed a claim against the premises under the mechanics' lien law, for the curb-stone so sold and set, in the District Court for the City and County of Philadelphia.

An amicable action was instituted on this claim in the District Court, to March term, 1835, as if a *scire facias* had issued and been returned, and the defendant filed a copy of his book entries, but the suit was not further prosecuted. An action on the case was then instituted, by agreement, in the same Court to June term, 1835, between the same parties, in which the plaintiff filed a copy of the defendant's note, and also a copy of his book entries, and declared in assumpsit on the note, and for work and labour done, &c. An affidavit of defence was filed on this suit, but a judgment was obtained on the 22d of June, 1835, for want of a sufficient affidavit of defence, and the damages were subsequently assessed at $265 14. A *fieri facias* was issued on this judgment, and afterwards a *venditioni exponas*, which was returned by the sheriff " proceedings stayed."

On the part of the District of Spring Garden the assessment book was produced, in which was contained an entry of an assessment for curbing and paving in front of the property of T. G. Leuffer, corresponding with the bill presented to the auditor. It appeared that the paving had been paid for by the district but not the curbing. It appeared also from the minute book that on the 1st of April, 1833, the superintendent was directed to notify the owners of property on Coats's street, to cause their footways to be graded, curved and paved, within sixty days from that date. Parol evidence was also given that the owners were duly notified, and that when they did not furnish the stone themselves, orders were given to Mr. M'Closkey to furnish it. The owners had a right to engage that their lots should be curbed at their own expense within thirty days, if they chose. Mr. M'Closkey was the stone-setter, and was in the habit of furnishing stone to the district, under an agreement that he was to collect the money, when he could get it from the owners or agents, and when he could not, he was to be paid by the corporation.

The District Court made the following decree.

"We find nothing in the evidence reported by the auditor, to warrant the conclusion at which he has arrived—that the curb-stone set in front of the lot of ground which has been sold by the sheriff in this case, was furnished and set, by, or on account of the District of Spring Garden. This is a question of fact, upon which any party in interest might have claimed an issue for the determination of a jury. This has not been asked, and the duty of ascertaining the

facts in dispute is devolved upon us.   We accordingly find that the curb-stone was furnished and set by Michael M'Closkey on his own account, and not for, or on account of the District of Spring Garden. No lien for curb-stone is given by the act of assembly, except to the district.   We award therefore the balance of money in Court to Robert Coburn in part of his judgment."

From this decree an appeal was taken by the commissioners of Spring Garden, and the following specifications of errors were filed.

"1. The Court below erred in awarding to Robert Coburn the balance in Court remaining therein on the 19th November, 1836.

2. The Court below erred in not awarding payment to be made of the said balance to the commissioners of Spring Garden, for their bill for curbing.

3. The Court below erred in deciding that the bill for curbing was not a lien under the acts of assembly of this commonwealth.

4. The Court below erred in deciding that the bill for curbing, was not a debt for which the said commissioners were liable *to* Michael M'Closkey.

5. The Court below erred in deciding that the curb-stone was not set and furnished, by, or on account of the said commissioners of Spring Garden.

6. The Court below erred in deciding that the same was furnished and set by Michael M'Closkey, on his own account, and not for, or on account of the said commissioners."

Mr. *J. A. Phillips* and Mr. *Price,* argued for the appellants, and

Mr. *J. M. Read* in support of the decree.

PER CURIAM.—The corporation is not a creditor.   The contract was made with the person who executed it.   He charged the price of the work as his proper debt, took a promissory note for it, and filed a claim—all in his own name.   The corporation might have set the curb-stone without the proprietor's consent, and charged the property with the price of it, but it has not done so.   It had given a general order to its stone-setter to execute all necessary curbing within the district, but under an agreement that he should collect his own moneys when he could, and that it should be only eventually liable.   This, though it made the corporation a surety, gave it no right to charge the property with a lien.

Decree affirmed.